IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| UNITED STATES OF AMERCA, | Case No. 1:25-CR-574 |
| Plaintiff, | |
| -vs- | |
| | JUDGE PAMELA A. BARKER |
| ROBERT AVERY, | |
| Defendant. | MEMORANDUM OPINION & ORDER |

This matter is before the Court upon the Motion to Revoke the Order of Release filed by the United States of America on December 15, 2025 ("the Government's Motion"). (Doc. No. 48.) On December 29, 2025, Defendant Robert Avery ("Defendant" or "Avery") filed a Reply to the Government's Motion ("Defendant's Reply") (Doc. No. 53.) Although given the opportunity to file a reply in support of the Government's Motion by January 5, 2026, the United States did not do so. Accordingly, the Government's Motion is ripe for a decision. For the reasons set forth below, the Government's Motion is DENIED, the Magistrate Judge's Release Order shall remain in place, but be amended to add to Avery's conditions of release, Location Monitoring and Home Detention.

I.  Background

On November 20, 2025, the Grand Jury returned an indictment charging eleven defendants, including Dykes, with various drug trafficking offenses related to the distribution of fentanyl, oxycodone and methamphetamine in Cleveland, Ohio. The indictment alleges that the conspiracy obtained pills for distribution in Detroit, where many of the co-conspirators live. Avery was charged with the following offenses:  1.) Conspiracy to Distribute and Possess with Intent to Distribute Controlled Substances, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(B) (Count 1);

Distribution of Cocaine, in violation of 21 U.S.C.§ 841(a)(1) and (b)(1)(B) (Count 8); and Use of a Communications Facility to Facilitate a Felony Drug Offense, in violation of 21 U.S.C. § 843(b) (Count 16).  (Doc. No. 1.)

On December 3, 2025, Avery was arrested in the Eastern District of Michigan and arraigned that same day.  The Government moved for detention and on December 5, 2025, the Magistrate Judge held a detention hearing for Avery and then ordered Avery released on bond.  That same day, the Government filed a Motion to Stay the Magistrate Judge's release order, which this Court granted. (Doc. Nos. 23, 24.)  On December 15, 2025, the Government's Motion was filed and on December 16, 2025, this Court appointed counsel to represent Avery, and after seeking an extension of time within which to respond to the Government's Motion, counsel for Avery filed Defendant's Reply on December 29, 2025.  The Government requests that this Court review the Magistrate Judge's determination, revoke the order, and order Avery detained pending trial in the Northern District of Ohio.  (Doc. No. 48, PageID # 378.)  Avery requests that this Court deny the Government's Motion, allow the December 5, 2025 order of release of the Magistrate Judge to remain in place as entered or as amended to include additional conditions such as home detention.  (Doc. No. 53, PageID # 403.)

    **II.**    **Law and Analysis**

18  U.S.C. § 3145(a)(1) provides in relevant part as follows:

> If a person is ordered released by a magistrate judge, *** the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the conditions of release.  The motion shall be determined promptly.

District courts exercise a *de novo* review of a magistrate judge's release or detention order. *United States v. Fitzhugh*, 2016 WL 4727480 (E.D. Mich. Sept. 12, 2016 (citations omitted); *United States v. Eckenrode*, 2013 WL 257052 (N.D.Ohio Jan. 23, 2013) ("A District Court reviews the release order of a Magistrate Judge *de novo*.")

2

Title 18 U.S.C. § 3142 "provides the framework for the district court's analysis as to whether release pending trial is proper." *United States v. Williams*, 2020 WL 2529356 (E.D.Tenn. May 18, 2020) (citing *United States v. Webb*, 238 F.3d 426, at *2 (6th Cir. 2000) (table opinion). "The ultimate touchstone of this analysis is 'whether there are conditions of release that will reasonably assure the appearance of the [defendant] as required and the safety of any other person and the community.' § 3142(g)." *Id*. Risk of flight must be proved by a preponderance of the evidence; dangerousness must be proved by clear and convincing evidence. *United States v. Hinton*, 113 A. App'x 76, 77 (6th Cir. 2004).

There is a "rebuttable presumption" that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community, i.e., a presumption that the defendant should be detained, when there is probable cause to believe that the defendant has committed an offense under the Controlled Substances Act that carries a maximum term of imprisonment of ten years or more or has committed certain firearms offenses. 18 U.S.C. § 3142(e)(3)(A) & (B). Avery is charged with offenses that carry a mandatory minimum five-year sentence and a maximum forty-year sentence and therefore, the parties agree, and the Court finds that there is a rebuttable presumption that no condition or combination of conditions will reasonably assure Avery's appearance as required and the safety of the community. 18 U.S.C. § 3142(e)(3).

According to the Sixth Circuit:

*** [S]ection 3142(e)(3)'s presumption in favor of detention imposes only a "burden of production" on the defendant, and the government retains the "burden of persuasion." *See, e.g., United States v. Mercedes,* 254 F.3d 433, 436 (2d Cir.2001); *United States v. Portes,* 786 F.2d 758, 764 (7th Cir.1985). A defendant satisfies his burden of production when he "com[es] forward with evidence that he does not pose a danger to the community or a risk of flight." *Mercedes,* 254 F.3d at 436. Although a defendant's burden of production "is not heavy," he must introduce at least some evidence. *United States v. Stricklin,* 932 F.2d 1353, 1355 (10th Cir.1991); *see also United States v. Rodriguez,* 950 F.2d 85, 88 (2d Cir.1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption.").

3

Even when a defendant satisfies his burden of production, however, "the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Mercedes,* 254 F.3d at 436. The presumption remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial. *See United States v. Jessup,* 757 F.2d 378, 384 (1st Cir.1985), abrogated on other grounds by *United States v. O'Brien,* 895 F.2d 810 (1st Cir.1990), ("Congress intended magistrates and judges, who typically focus only upon the particular cases **\*946** before them, to take account of the more general facts that Congress found"); *see also United States v. Dominguez,* 783 F.2d 702, 707 (7th Cir.1986) ("[T]he presumption of dangerousness ... represents Congressional findings that certain offenders ... are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions."). To rebut the presumption, therefore, a defendant should "present all the special features of his case" that take it outside "the congressional paradigm [.]" *Jessup,* 757 F.2d at 387.

Regardless of whether the presumption applies, the government's ultimate burden is to prove that no conditions of release can assure that the defendant will appear and to assure the safety of the community. In determining whether the government has met that burden of persuasion, the court must consider certain factors:
(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, ... a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including—
(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release....
18 U.S.C. § 3142(g). However, consideration of these factors shall not be construed to modify or limit the presumption of innocence. 18 U.S.C. § 3142(j).

*United States v. Stone*, 608 F.3d 939, 945-46(6th Cir. 2010).

Before proceeding with its analysis, the Court will summarize the information set forth in the Pretrial Services Report prepared on December 3, 2025 ("PSR"). The PSR indicates that Avery was interviewed, and verifications were obtained from his mother and the defendant's demographic

4

information was verified via an Accurint inquiry. The PSR provides the following relevant information. Avery is 31 years old, single and claims paternity of one child. He is a native and lifetime resident of Michigan. Avery reported living with his grandfather on Lumpkin Street in Detroit, Michigan since June 2025. Avery reported that before living at the Lumpkin Street home, he was "couch surfing" with different friends and family members from sometime in 2023 through June 2025. Between 2021 and 2023, Avery lived in an apartment in Warren, Michigan. Avery's mother reported that Avery has been "house hopping" with different family members over the last six (6) months. His family ties to the Eastern District of Michigan include his mother, seven (7) brothers, nine (9) sisters, child, child's mother, fiancée, and grandfather. Avery denied possession of a passport or Enhanced Driver's License. His standard driver's license is currently revoked. Avery reported working full-time, 40 hours weekly, for a commercial cleaning company, ISC Services, for the past ten (10) month and earning $800 weekly. Avery also reported working a second job with Superior Moving from 2023 to the present and explained that the job is part-time, seasonal and he earns $1500 per month. Avery reported being employed by another moving company, Juggernauts Moving & Storage from 2021 through 2023 and before that, being employed by Motor City Stamping for five (5) months. Avery's mother confirmed Avery's employment with ISC Services and the two moving companies. Avery also receives food stamps of $291 per month and receives financial support from his mother and fiancé.

      Avery reported and his mother confirmed that he is in good physical health. While Avery's mother verified that Avery has never received any clinical diagnoses does not take any mental health medications, she explained that he may have post-traumatic stress disorder, although she was unable to explain why she believes this. Avery reported smoking marijuana daily and participating in and completing substance abuse treatment while incarcerated.

The PSR indicates that in 2012 when he was 18 years old, Avery participated in the carjacking of a pizza delivery driver and used a gun to force the driver out of the car and was convicted of Armed Robbery and served six years in prison. During his incarceration, Avery had 29 misconduct violations. Avery was paroled on 8/8/2018 and was discharged from parole on 8/8/2020. The PSR indicates twenty-four failures to appear and active warrants for what the Government acknowledges are "minor violations."[1] (Doc. No. 48, PageID # 383.)

The PSR writer concluded that although Avery posed a risk of nonappearance due to his history of failure to appear/numerous active warrants, transient housing history, substance abuse history and lack of ties to charging district, there are conditions that can be imposed to mitigate these risks. And, although the PSR writer concluded that Avery posed a risk of danger due to the nature of the instant offense, history or charge involving violence, history of illegal weapons possession or use, criminal association, pattern of similar criminal activity history, prior arrests and convictions, and substance abuse history, there are conditions that can be imposed to mitigate these risks.

Citing to the transcript of the detention hearing, the Government correctly asserts that "at the detention hearing, Avery's counsel argued that Avery appears to have played a small role in the organization charged, that he has family support, that his violent criminal history is outdated, that he has been employed for 10 months, and that although he has 'an incredible amount' of warrants for minor offenses, it was because he did not have the money to pay to resolve those cases." (Doc. No. 48, PageID # 380.) The Government notes that despite reporting that he makes $2300 per month, Avery has not made any effort to resolve the open warrants and has continued to fail to appear to answer for these many

---

[1] Defendant correctly asserts that the "vast majority" of what the Government acknowledged were "minor offenses" "relate to not having a valid operator/driver's license" and argued that "it is unfortunately a typical pattern for driver[s] who can not pay costs in their original traffic cases and then continue to drive, often of necessity to get to work, school, or other obligations." (Doc. No. 53, PageID #s 401-02.) And, quoting in relevant part from the detention hearing transcript, after Defendant proffered this point at the hearing, the Magistrate Judge recognized this. (*Id.*)

6

violations. (*Id.*) The Government disagrees with what it intimates is the Magistrate Judge's dismissiveness of the 24 failures to appear and resulting active warrants, in favor of finding that Avery's compliance on parole following his armed robbery conviction was more indicative of his risk of flight. The Government argues that while Avery's job and family ties may "inform[] his likelihood to appear,[2] they do nothing to address his drug trafficking that is at the heart of his current offenses[;]" and "[t]hat is insufficient to rebut the presumption," citing *United States v. Mercedes*, 254 F.3d at 436-37, for its argument that family ties and a residence do not outweigh the presumption of dangerousness. The Government contends that this Court's analysis should end here because Avery did not meet his burden of production. The Government correctly asserts that the Magistrate Judge's order of release did not cite any evidence that rebutted the presumption of dangerousness. However, the Government also represents that "[a]t the detention hearing, the Magistrate Judge concluded that Avery was 'perhaps a go-between, but more of a customer than someone who played a more minor role[.]'" (Doc. No. 48, PageID # 382.) This Court interprets this conclusion of the Magistrate Judge as demonstrating consideration of the danger Avery poses to the community if released, and along with the argument that Avery's violent offenses had occurred 13 years ago, indicates to this Court, and contrary to the Government's position, that Avery did meet his burden of production associated with the presumption that he is a danger to the community.

In Defendant's Reply, and while not disputing that the rebuttable presumption of detention applies, Defendant does not take a position or comment on whether he has met his "not heavy" burden of production in introducing at least some evidence that he is not a flight risk of a danger to the community. *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). Instead, Avery goes straight to analyzing the § 3142 factors. Indeed, the Government also analyzes those factors. And because this Court has found

---

[2] The Government properly cites *United States v. Gray*, (20 F. App'x 473, 475 (6th Cir. 2001) for the proposition that family ties do not overcome the presumption of detention. (Doc. No. 48, PageID # 381.)

7

that Avery has met his "not heavy" burden of production to rebut the presumption of detention, it, too, has evaluated the § 3142 factors. The Court's evaluation is set forth below.

The Court finds that because the three charges against Avery allege that Avery distributed and conspired to distribute controlled substances, to include the allegation that he coordinated the sale of a kilogram of cocaine from Cleveland to a customer in Pennsylvania to allow it to be sold by his associates, and two of the charges carry a mandatory five-year term, this first factor – the nature and circumstances of the offense - weighs in favor of detention. The Court acknowledges that Avery argues that his relevant conduct charged in the Indictment "is limited" in that although the Indictment covers 32 pages and 80 paragraphs of text, Avery is only mentioned in a total of four short paragraphs: two of those paragraphs refer to two phone calls on the same date; and the other two relate to two other phone calls. (Doc. No. 53, PageID # 399.) Indeed, the Court also acknowledges the Magistrate Judge's conclusion that "…the indictment describes a very limited role on Mr. Avery's part." (*Id.*, PageID # 400, quoting the Hearing Transcript, p. 21, lines 9-19.) However, the Court agrees with the Government that Avery allegedly "was not a minor player selling small drug quantities to users; he was someone who had a customer in Pennsylvania who could purchase a kilogram of cocaine from Avery's associates in the organization." (Doc. No. 48, PageID # 382.) That allegation, combined with the fact that two of the three offenses with which Avery is charged carry five-year mandatory prison terms, demonstrate that Avery is a flight risk and a danger to the community.

However, the Court finds that the weight of the evidence does not support detaining Avery. This factor relates to the evidence of dangerousness or risk of flight, not to the weight of the evidence of Avery's guilt. *United States v. Stone*, 608 F.3d at 948. The Court acknowledges the Government's argument that because Avery has a criminal history that includes Armed Robbery and use of a gun this factor weighs in favor of detention, but that offense occurred when Avery was 18 years old and over 13

8

years ago. Other than that conviction, Avery has no other criminal history except for the multiple "minor offenses" referenced in the PSR. Avery has not been convicted of any other firearm or violent felony offense since 2012, and he is not charged with any firearm offense in the Indictment.

Finally, the Court finds that the history and characteristics of Avery do not support detaining Avery. It is true that Avery does not have any ties to the Northern District of Ohio and has a transient housing history, but he does have many ties to the Eastern District of Michigan and more importantly, he is in part reliant upon those family ties, specifically his mother and grandfather and other family members for providing places to live and/or stay and his mother and fiancé help support him financially. Avery has two jobs and although he has only been employed for 10 months at his current full-time job, he has and has had other part-time seasonal work to supplement his income. The Court acknowledges that Avery is a self-proclaimed daily marijuana user, but he did undergo treatment previously when he was incarcerated. While the Government certainly has a point in arguing that even though Avery's twenty-four failures to appear and active warrants show his "indifference to the legal system and highlights the strong risk of non-appearance he presents in this case," this Court is persuaded by Defendant's explanation of a "common problem" associated with a driver who can not pay costs in their original traffic cases and then continue to drive to work and live. (Doc. No. 48, PageID # 383; Doc. No. 53, PageID 402.) The Government also submits that the charges against Avery in the instant matter – because of the substantial penalties he faces if convicted – give him more of an incentive not to appear in this matter than the 24 failures to appear and active warrants which demonstrate his propensity not to appear. However, the Court has already considered this in finding that the nature and circumstances of the offense weigh in favor of detention. Moreover, this Court is not excusing Avery's indifference to the legal system but is acknowledging the validity of Defendant's argument and the Magistrate Judge's comments associated therewith quoted in Defendant's Reply. (Doc. No. 53, PageID # 402.) The Court certainly acknowledges

that Avery had 29 misconduct violations while incarcerated and agrees with the Government, then, that "Avery showed a disregard for any rules that were meant to constrain him."  (Doc. No. 48, PageID # 383.)  But countering that is Defendant's argument that Avery was discharged from parole within 2 years of his release with no violations.

Although this Court has concluded that the history and characteristics of Avery weigh in favor of release rather than detention, the Court finds that it is a close call.  So, the Court believes that adding a condition of Location Monitoring and Home Detention will help alleviate the Court's and the Government's concerns of the lack of Avery's ties to the Northern District of Ohio, his history of transient housing, his substance abuse, and his indifference to, and disregard for the rules of, the legal system.  Indeed, in Defendant's Reply, as an alternative to Avery's request that this Court find that the order of the Magistrate Judge should remain in place, Avery requested that the order be amended to include additional conditions such as home detention.  Thus, this Court amends the Magistrate Judge's order to include as conditions of Avery's release Location Monitoring and Home Detention.  s

### III. Conclusion

For the reasons set forth above, the Court finds that the Government has failed to meet its burden to show by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of Avery, and it has failed to meet its burden to show by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of any other person and the community.  Therefore, the Government's Motion is DENIED.  The Court concludes that the Magistrate Judge's order must remain in place, but it must be amended to include the conditions of Location Monitoring and Home Detention.

**IT IS SO ORDERED.**

                                              *s/Pamela A. Barker*
                                              PAMELA A. BARKER
Date: January 13, 2026                 U. S. DISTRICT JUDGE